IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
ANNETTE ROTH,                                           : CASE NO.  1:10 CV 02569
                                                        :
                                    Plaintiff           :
                                                        : MEMORANDUM OF OPINION AND
            -vs-                                        : ORDER DENYING DEFENDANT'S
                                                        : MOTION FOR SUMMARY JUDGMENT
                                                        :
NCC RECOVERY, INC.,                                     :
                                                        :
                                    Defendant.          :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Plaintiff Annette Roth ("Ms. Roth") brought this action against NCC Recovery, Inc. ("NCC"), pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., alleging violations of § 1692(d) and § 1692(d)(5), prohibiting a debt collector from engaging in conduct the natural consequence of which is to abuse, oppress, or harass any person.  (Complaint ¶ 15).  NCC now moves for summary judgment (Doc. 19), contending that, as a matter of law, Ms. Roth has not provided the requisite evidence or put into dispute any facts that NCC violated the provisions of the FDCPA.  Ms. Roth opposes the summary judgment motion, contending that sufficient evidence has been placed before the Court from which a reasonable juror could conclude that NCC violated §§ 1692(d) & (d)(5).  (Doc. 22).   In its reply, NCC challenges the introduction of Ms. Roth's Affidavit submitted with her oppositional brief,

and seeks to align the instant matter with other District Court cases in the Sixth Circuit, specifically Fry v. Berks Credit & Collections, Inc., 2011 WL 6057781 (N.D. Ohio, November 17, 2011), Hicks v. America's Recovery Solutions, LLC, 2011 WL 4540755 (N.D. Ohio 2011), Saltzman v. I.C. System, Inc., 2009 WL 3190359 (E.D. Mich. 2009), and Millsap v. CCB Credit Services, Inc., 2008 WL 8511691 (E.D. Mich. 2008).

For the reasons set forth below, this Court finds a genuine dispute of material fact remains and, accordingly, will deny summary judgment on Ms. Roth's claims.

### I.  BACKGROUND

From the record evidence provided, the Court learns that NCC began contacting Ms. Roth in March of 2010 in an effort to collect a debt allegedly owed a nursing home and rehabilitation center. That debt was allegedly incurred by Ms. Roth's recently deceased father for medical expenses. NCC avers that it was engaged by Sunbridge NE West Bay, the nursing facility, to collect a debt owed by Ms. Roth's deceased father, John Gasparik, from his estate. (Doc. 20, Boggs Affidavit, ¶¶ 4-6). Ms. Roth alleges NCC left a voice message that stated "you need to step up to the plate and take care of matter for John [Ms. Roth's father]." (Complaint ¶14). Ms. Roth testifies by affidavit that from her "earliest talks with [NCC]" she "informed it that representatives at [her deceased father's nursing home] explicitly informed [her] that [her] father's final expenses would be covered, and that [she] did not need to make payment to other entities in connection with [her] father's final expenses." (Doc. 22, Roth Affidavit, ¶ 4). According to the affidavit of Steve Boggs, president of NCC, the company placed at least 50 calls to Ms. Roth's home or her personal cell phone between March 24 and

2

November 15, 2010 in an effort to collect on her deceased father's debt. NCC acknowledges it made contact with Ms. Roth on 27 March 2010, and indicate through its records that Ms. Roth stated she would not pay NCC "a dime" and that her payments to the nursing home "were none of NCC's business." (Boggs Aff. ¶11). NCC also acknowledges it made contact with Ms. Roth on 9 April 2010, when she allegedly told NCC she was on her way home from Florida and hung up on NCC when she was advised of the purpose of the call. (Boggs Aff. ¶ 11).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting

Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties."  Id.; Fed.R.Civ.P. 56(c).  The analysis now turns to the merits of Defendant's motion for summary judgment.

### III.    LAW AND ANALYSIS

As an initial matter, the court notes that NCC objects to Ms. Roth's Affidavit as allegedly containing material that contradicts her Interrogatory submissions.  (Doc. 24).  "A party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his [or her]

4

earlier deposition testimony." Penny v. United Parcel Service, 128 F.3d 408, 415 (6th Cir. 1997). The Court has reviewed both the Interrogatories (Doc. 19, Ex. B) and Ms. Roth's Affidavit (Doc. 22, Ex. A) and does not find the Affidavit in contradiction. The Plaintiff objected to Interrogatory questions 7, 8 & 14 as overbroad, vague and ambiguous and further noted "[n]otwithstanding, Plaintiff reserves the right to supplement this Interrogatory as investigation is ongoing and Plaintiff continues to compile information." The NCC never certified a discovery issue on these Interrogatory questions and the answers remained unchallenged. Thus, to the extent Ms. Roth's Affidavit does not contradict her earlier answers to interrogatories, but rather expands upon them, the court will not disregard the later filed Affidavit.

The FDCPA was passed to eliminate "abusive, deceptive, and unfair debt collection practices." Barany–Snyder v. Weiner, 539 F.3d 327, 332 (6th Cir. 2008) (citing 15 U.S.C. § 1692(a)). Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 329 (6th Cir. 2006). The least sophisticated consumer test is objective and is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 438 (6th Cir. 2008).

Plaintiff alleges violations of § 1692d, § 1692d(5). This part of the FDCPA reads as follows:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ...

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d.

Defendant NCC contends that Ms. Roth has failed to demonstrate the intent element of § 1692d(5) and that the frequency and duration do not amount to a violation. Ms. Roth argues, in turn, that the inference of intent can be drawn from the volume and pattern of phone calls, a fact issue to be decided by a jury.

Courts have followed the Federal Trade Commission's interpretations, finding that the term "repeatedly" means "calling with excessive frequency under the circumstances," and that "continuously" means "making a series of calls, one right after the other." See McVey v. Bay Area Credit Service, 2010 WL 2927388, at *6 (N.D. Tex. July 26, 2010) (citing to Federal Trade Comm'n Staff Commentary on the Fair Debt Collection Practices Act, Fed.Reg. 50097). Although a court may consider the "frequency, persistence, and volume of the telephone calls" to determine intent, the mere fact that a call is unwelcome is "insufficient to constitute a violation of the FDCPA." Martin v. Select Portfolio Serving Holding Corp., 2008 WL 618788 (S.D. Ohio Mar. 3, 2008). Further, a significant disparity between the number of telephone calls placed by the defendant and answered by the plaintiff may suggest difficulty in reaching the plaintiff rather than intent. Saltzman v. I.C. System, Inc., 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009).

Courts recognize, however, there is no bright line rule regarding the number of calls which creates the inference of intent. Hicks v. America's Recovery Solutions, LLC, 2011 WL 4540755, at *6 (N.D.Ohio 2011). For instance, in Sanchez v. Client Services,

520 F.Supp.2d 1149, 1160 (N.D. Cal. 2007), the court granted summary judgment to the plaintiff on a § 1692d(5) claim based on 54 calls over a six-month period, including a day in which six calls were made. Yet, in Tucker v. The CBE Group, Inc., 710 F.Supp.2d 1301, 1305 (M.D. Fla. 2010), the court granted the defendant's motion for summary judgment despite 57 calls, including 7 in one day. Finally, the court in Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F.Supp.2d 492, 506 (D. Md. 2004), determined that intent was a jury question when the defendant placed 28 calls over a two-month period, but the Saltzman court granted summary judgment to the defendant, despite a higher number of calls than in Akalwadi over a similar time period. 2009 WL 3190359 at *6–7.

Defendant argues that the volume and frequency of calls in this case merit summary judgment in its favor. It points to the fact that only 50 calls were made over an eight-month period, a lower volume than many cases in which courts granted summary judgment to the debt collector. Further, NCC claims that it only called twice in the same day on only two occasions.

Yet, the Court determines that the number of calls is not entirely dispositive in this case. Instead, the nature, extent, and context of the calls bear review. Ms. Roth's Affidavit indicates that NCC continued to call her on a regular and frequent basis, despite being advised that the nursing home advised her that her father's final expenses would be covered. There is, further, an indication from both parties that Ms. Roth spoke with NCC representatives on several occasions and that NCC representatives left messages on her phone. As such, the Court does not find a significant disparity between the number of calls placed and answered, a factor that courts, such as the

7

Saltzman court have used to excuse high call volumes on the theory that it indicates a difficulty in reaching the consumer.  Given the evidence before the Court, a reasonable jury could find the requisite intent to harass or annoy.  Thus, a genuine dispute of material fact remains and summary judgment is denied in this action.

### IV.    CONCLUSION

For the reasons set forth above, this Court denies NCC's motion for summary judgment.

IT IS SO ORDERED.

                                                 /s/Lesley Wells
                                    UNITED STATES DISTRICT JUDGE